PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 9924
VICTORIA C. MULLINS, ESQ.
Nevada State Bar No. 13546
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
E: victoria@mullinstrenchak.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BREONNA FLEMING, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>SOMERSET ACADEMY OF NEVADA, d/b/a,<br>SOMERSET ACADEMY OF LAS VEGAS a<br>Domestic Non-Profit Corporation,<br><br>        Defendants. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**Causes of Action:**<br>1) **Discrimination based on gender (pregnancy)**<br>   **race (African-American)**<br>2) **Retaliation**<br>3) **Violation of The FMLA**<br>4) **Violation of The ADA** |

## COMPLAINT

        Plaintiff, BREONNA FLEMING (hereinafter "Plaintiff") by and through her attorney PHILIP

J. TRENCHAK, Esq., of Mullins and Trenchak, Attorneys at Law, hereby brings suit against

SOMERSET ACADEMY OF NEVADA, doing business as a domestic non-profit corporation

(hereinafter "Defendant"), inclusive, and avers and alleges as follows:

### JURISDICTION

        1.        This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §2000e to 2000e-17 (retaliation), Section 706 of Title VII unlawful discharge, and

Tortious Discharge.

        2.        This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. §

1

1331 (federal question), 28 U.S.C. §1343(a)(4)(civil rights action) and 42 U.S.C. §2000e-5(f)(3)(unlawful discrimination and retaliation in employment). This Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3.    All material allegations relative to the named defendants contained in this Complaint are believed to have occurred in the State of Nevada, Clark County.  Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4.    Plaintiff initiated the process of filing a Charge of Discrimination against her former employer, the Defendant named in this action, with the United States Equal Opportunity Commission ("EEOC") wherein she alleged discrimination on the basis of her age, sex and retaliation as a continuing action.  This was done within 300 days of the incident giving rise to this complaint.

5.    Thereafter, Plaintiff's attorney received BREONNA FLEMING's Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.  Please see attached Exhibit A.

6.    This action is being filed within 90 days of the EEOC "Right to Sue" Letter being received by Plaintiff.  Therefore this action is timely.

7.    Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## PARTIES

8.    Plaintiff is, and was at all times material to this action, an individual, residing in the State of Nevada, employed by Defendant.

9.    Plaintiff is informed and believes, and thereupon alleges, that Defendant is and was at all times material to this action, SOMERSET ACADEMY OF NEVADA d/b/a Somerset Academy of Las Vegas, doing business as a non-profit corporation (hereinafter "Defendant"), duly authorized to transact, and in fact transacting business in the County of Clark, State of Nevada.

## GENERAL ALLEGATIONS

10.    Plaintiff is informed and believes, and thereupon alleges, that on or about August 1, 2018, Plaintiff entered into employment with Defendant.

11.    On April 18, 2019 Plaintiff's pregnancy was confirmed by her physician.

2

12.      On May 15, 2019 Provided Doctor's note to employer that I was unable to work from May 14, 2019 to June 03, 2019 due to illness related to the pregnancy.

13.      On May 17, 2019 Plaintiff's spouse, Eric Fleming, received Spousal intermittent FMLA until December 10, 2019 due to Plaintiff's severe hyperemesis gravidarum and fragile state.

14.      On, July 11, 2019 Due to severe dehydration and malnutrition, Plaintiff was referred by her doctor to immediately receive home IV therapy.

15.      On August 01, 2019 Plaintiff returned to her First Day of Work (return from summer break)

16.      On August 2, 2019  Plaintiff was out sick.

17.      On August 05, 2019 an email was sent To: April Nestor requesting FMLA paperwork and a current employee contract for the 2019-2020 school year.

18.      On August 09, 2019 an Email was received From: April Nestor with the incorrect FMLA paperwork.

19.      On August 21, 2019 Plaintiff's physician placed her on immediate bed rest for two (2) weeks for preterm labor precaution.

20.      On August 22, 2019, Plaintiff provided April Nestor with her doctor's note stating that she had a serious underlying medical condition and that her doctor is requesting her FMLA intermittent forms immediately, so that Plaintiff may receive the proper medical attention quickly without Plaintiff's job being put in jeopardy

21.      Before Plaintiff's conversation began with April Nestor, Plaintiff stood outside her door waiting to be welcomed in.

22.      However, April responded extremely unprofessional and dismissive.

23.      April Nestor made an aggressive hand gesture flicking and pointing her finger at Plaintiff and rudely saying, "uhh yeah what do you need?"

24.      Plaintiff proceeded to hand April Nestor her doctor's note and April Nestor stated, "We will see what we can do. You need two (2) weeks off!"

25.      Plaintiff was appalled by April Nestor's flagrant disregard for her well-being that Plaintiff walked away holding back tears.

3

26.     For the next two (2) weeks she only took off of work once because she was in fear of losing her job.

27.     Plaintiff called out sick on August 26, 2019.

28.     On August 27, 2019 (Email) was sent by Plaintiff To: Assistant Principal Michelle Lorig wherein Plaintiff made Michelle Lorig aware of her tenuous medical condition because she was asked to perform a job duty, standing outside on the school blacktop directing traffic in August in the heat of the Las Vegas sun afternoon.

29.     Plaintiff's email stated that she is under doctor's order to not stay on her feet or overexert herself without any future complications that put her safety and her unborn child's life at risk. Such things will cause Plaintiff to go into preterm labor. Plaintiff asked if she could switch her time until after her child was born.

30.     Plaintiff called out sick on September 05, 2019.

31.     On September 18, 2019 (1st Email) To: Crystal Thiriot at Academica inquiring about obtaining her FMLA paperwork needed, or any other additional forms that Plaintiff may need for medical leave and questions pertaining to future maternity leave.

32.     Plaintiff asked April Nestor if she is getting her paperwork together and she said very abruptly, "I gave you everything already!"

33.     Plaintiff was so upset by April's response that Plaintiff left her office and emailed Crystal Thiriot with the same exact questions.

34.     At this time, Plaintiff was desperate for answers because everyday her health was fading and Plaintiff desperately needed to take time off and begin her medical leave.

35.     (2nd Email) To: Crystal Thiriot and April Nestor inquiring about Plaintiff obtaining FMLA paperwork needed or any other additional paperwork that Plaintiff may need for medical leave and questions pertaining to future maternity leave.

36.     September 19, 2019 (Email) From: Crystal Thiriot answering some of Plaintiff's questions regarding her medical leave and paperwork needed.

37.     Any questions not answered by Crystal, she redirected those questions to April Nestor.

38.     April Nestor had not been accurate with information, nor responsive in a timely manner and also had exhibited extremely rude and unprofessional behavior towards Plaintiff.

39.     During this time Plaintiff took notice of the way April Nestor interacted with the other women and men who were white at work.

40.     Plaintiff noticed a clear distinction: April Nestor greeted the white people with a smile and eagerly assisted them.

41.     On September 20, 2019 Plaintiff called out sick

42.     On September 23, 2019 (Email) From: April Nestor finally responds to Plaintiff's original email.

43.     April instructed Plaintiff to submit FMLA forms ASAP.

44.     Plaintiff is told by April that her FMLA will ONLY start once her baby is born.

45.     Plaintiff then responded in the same email thread informing April Nestor that she gave Plaintiff all the wrong forms.

46.     Plaintiff informed Ms. Nestor that every time she visits with her doctor with the information she gives Plaintiff forms, the forms are the wrong forms.

47.     April then responded, "I don't know what to tell you I gave you the right forms. Your doctor has whatever forms you need, ask them for your FMLA forms."

48.     On October 03, 2019 Plaintiff returned to her Doctor and delivered April's message that she was to get my FMLA forms from her office.

49.     Plaintiff's OBGYN was in complete shock by April's unprofessionalism and blatant disregard, the doctor had her Office Manager Rhonda personally call April to speak to her about giving Plaintiff the correct forms because Plaintiff was in such a fragile state that it was imperative Plaintiff receive her paperwork.

50.     However, because Plaintiff did not have the correct FMLA forms.

51.     Plaintiff's doctor could only supply another note stating that she needed to be absent from work 1-2 times a week.

52.     On October 04, 2019 Plaintiff was out sick from work.

53.     On October 07, 2019 (Face to Face) Plaintiff supplied April Nestor with her doctor's

note which stated Plaintiff needed to be out 1-2 times a week.

54.     Plaintiff once again told April that her OBGYN is stating Plaintiff does NOT have the forms April must supply to the OBGYN.

55.     On October 08, 2019 an (Email) was sent To: April Nestor stating that Plaintiff needs the correct forms for Plaintiff's FMLA.

56.     On October 8, 2019 (Email) To: April Nestor asking who Plaintiff can speak to in Human Resources to have Plaintiff's perpetually unanswered questions answered.

57.     Plaintiff stated this was an URGENT matter.

58.     April responded stating she gave Plaintiff the paperwork and would not disclose her supervisor until Plaintiff asked for the second time.

59.     Ms. Nestor then gave Plaintiff the number to a Lauren Stubbs at Academica who is not Ms. Nestor's supervisor.

60.     Rhonda stated that April would NOT give out the information on what paperwork Plaintiff needed for FMLA medical release.

61.     Rhonda stated that she would help Plaintiff figure something out.

62.     On October 09, 2019, Plaintiff was out sick and hospitalized due to immense amount of stress.

63.     Plaintiff then went into Preterm Labor at Centennial Hill Hospital.

64.     Plaintiff was given treatment to stop the labor and discharged with orders for bed rest.

65.     On October 10, 2019 Plaintiff was out sick and received an (Email) From: April Nestor with correct intermittent FMLA forms.

66.     April Nestor apologized about the delay.

67.     April Nestor claimed that, "No one knew what she was talking about."

68.     On October 15, 2019 (Face to Face) Plaintiff returned to work and was in the middle of teaching when Plaintiff began to bleed heavily with contractions.

69.     Plaintiff first thought was that she was losing her baby.

70.     Plaintiff immediately emailed the Office Manager April Nestor, Assistant Principal David Fossett. and Principal Jessica Scobell to notify them that Plaintiff can not continue on in the

day and that Plaintiff has arranged for a substitute to fill in for Plaintiff.

71.    While Plaintiff sat at her desk packing her things to leave, Davd Fosett ran frantically down to Plaintiff's classroom and said that April told Fosett to tell Plaintiff that if Plaintiff leaves today, Plaintiff's job will be at risk.

72.    Plaintiff was told that she will lose her job due to running out of her PTO (personal Time Off).

73.    Plaintiff was told that she has no FMLA in place.

74.    Plaintiff immediately started crying.

75.    Plaintiff broke down from all the frustration, sheer pain and unnecessary stress caused by April Nestor.

76.    The threat Nestor made of Plaintiff losing her job left Plaintiff feeling completely broken and helpless.

77.    Plaintiff felt that she was being mistreated because she is a young black pregnant woman.

78.    Plaintiff was being treated worse than any other woman of color on the entire school campus.

79.    Plaintiff was constantly treated as if her life and her unborn child's life is insignificant.

80.    Plaintiff explained to David Fossett that for the past three (3) months Plaintiff had been asking April for her FMLA forms and that Plaintiff is extremely sick.

81.    David Fossett listened to Plaintiff's concerns and apologized for April's behavior and attitude towards Plaintiff.

82.    Plaintiff then proceeded to finish packing up her things and left for the hospital.

83.    On October 17, 2019 (Face to face), Plaintiff supplied April Nestor with her doctor's note.

84.    The note stated that Plaintiff needs to be off 1-2 times a week due to medical reasons.

85.    On October 17, 2019 Plaintiff returned to work and at approximately 7:35 am, David Fosset saw Plaintiff in the hallway outside of her classroom and he stopped Plaintiff to apologize again for sending the message through him from April about firing Plaintiff.

86.     October 17, 2019 Email From: Principal Jessica Scobell Apologizing for April's unprofessionalism and that they had no idea on how to conduct the FMLA process.

87.     On October 17, 2019, (Doctor visit afternoon) Doctor highly recommended Plaintiff going on bed rest for the remainder of Plaintiff's pregnancy.

88.     Plaintiff's physician attributed the need for bedrest to be due to all the stress that is causing the preterm labor.

89.     However, because Plaintiff's job was threatened, Plaintiff was afraid to take any additional days off in fear of being fired before giving birth to her child.

90.     Plaintiff was forced to use all of her PTO time off and had nothing else left for income if Plaintiff called out of work.

91.     On October 17, 2019 Plaintiff had a face to face meeting with Jessica Scobell of Jessica Scobell confirming that she and April Nestor had no idea on what to do or what paperwork Plaintiff needed.

92.     October 22, 2019 Plaintiff filed an EEOC charge which was sent to Defendant by Plaintiff's Counsel.

93.     On October 23, 2019 and October 24, 2019, Plaintiff was out sick and then hospitalized.

94.     On October 24, 2019 on Email was received From April Nestor: Stating that Plaintiff had exhausted all of her personal time off and that Plaintiff's job is at risk due to FMLA not being in place.

95.      On October 28, 2019 and October 29, 2019 Plaintiff called out sick.

96.     On November 8, 2019 (Face to face meeting with Crystal Thiriot and April Nestor during the meeting Plaintiff expressed her serious concern that Plaintiff is not receiving fair treatment.

97.     Crystal then gave Plaintiff the CORRECT FMLA paperwork.

98.     During the meeting April Nestor was extremely rude and walked out of the meeting saying, "See I can't deal with you."

99.     Crystal Thiriot then moved Plaintiff to a private office and apologized for April Nestor's behavior and then gave Plaintiff the correct FMLA forms.

100.    Jessica Scobell later entered the meeting visibly annoyed saying, she has tried with Plaintiff.

101.    During our meeting Plaintiff repeatedly told Jessica Scobell and Crystal Thiriot that, Plaintiff feels that she is being mistreated because she is a black pregnant woman.

102.    That Plaintiff has been asking for the same forms since August and now Plaintiff is being threatened to be fired if Plaintiff does not supply them.

103.    On November 12, 2019 Plaintiff has a face to face conversation with April Nestor.

104.    April Nestor on recorded audio confesses to not giving the correct FMLA paperwork for months to Plaintiff.

105.    April Nestor claims Academica did not give her the correct forms and no one knew how to execute FMLA.

106.    Plaintiff again expressed her major concern that she had an issue with Plaintiff being a black pregnant woman and that she was mistreated by Ms. Nestor.

107.    Plaintiff's health was failing fast and Plaintiff had no support at work to ensure my employment.

108.    On November 15, 2019 an Email was received from: April Nestor stating that she will approve both intermittent and Maternity FMLA now.

109.    Plaintiff had concerns that April did not put the correct dates on the Federal Paperwork and Plaintiff is not comfortable with signing a document that is incorrect.

110.    April Nestor never responded to Plaintiff addressing her concerns over the incorrect dates that Nestor put on legal documents.

111.    Plaintiff felt like April Nestor's actions were a desperate attempt to cover herself and Jessica Scobell.

112.    Jessica Scobell signed the backdated document.

113.    On November 29, 2019 Plaintiff gave birth to her child who had a low birth weight and a heart murmur.

114.    On December 1, 2019 (Email) To: April Nestor, David Fossett, C1ystal Thiliot and Jessica Scobell) Notified Employer of the birth of Plaintiff's child.

115.     On December 11, 2019 (Email) From: April Nestor stating Plaintiff used sixteen (16) of my sixty (60) days of FMLA.

116.     Plaintiff does not have Maternity FMLA coverage in place even though Plaintiff has been requesting these forms for months.

117.     January 13, 2020 (Email) To: April Nestor from Plaintiff, that Plaintiff did not receive her Winter bonus.

118.     January 15, 2020 (Email) To: Crystal Thiriot from Plaintiff, that Plaintiff did not receive a paycheck this pay period nor did Plaintiff receive a paycheck last period.

119.     When Plaintiff inquired about her maternity leave in September, Plaintiff informed Crystal Thiriot that Plaintiff will be paid for the holiday break.

120.     However, Plaintiff was not paid.

121.     Also, Plaintiff never received her bonus check.

122.     Plaintiff informed April Nestor on January 6, 2020 that she had not yet received her bonus check.

123.     April then told Plaintiff that her check was mailed to Plaintiff's home.

124.     On January 13, 2020, Plaintiff notified April again that she had not yet received her bonus check.

125.     April told Plaintiff that a check will be issued to Plaintiff and sent out.

126.     Plaintiff was extremely concerned that she would not be paid. I feel that this was not fair treatment. I inquired as to why I am not being paid. And explained that the actions of Academica and April Nestor has put unnecessary stress on myself and my new family

127.     Crystal then responded saying I was not entitled to my winter check because I was on FMLA leave.

128.     Crystal then added a Michael Muehle to the thread and backtracked her statement saying, there was confusion and that Plaintiff is entitled to her pay.

129.     02/12/20 (Email) To: David Fossett, April Nestor and Jessica Scobell stating I had a medical emergency and will not be in today. April Nestor then responds saying Plaintiff can only come back once she has a clearance from her OBGYN per FMLA regulation.

10

130.     Plaintiff was confused by this request, but Plaintiff still obtained her doctor's note stating she was not cleared for work until March 16, 2020, due to severe depression and anxiety.

131.     Plaintiff was prescribed medication immediately and was referred out to see a Psychiatrist, Psychologist and, counselor for further treatment.

132.     On March 2, 2020 Plaintiff's son's Pediatrician, Dr. Lepore, confirmed Plaintiff's son's low birth weight and cause of preterm labor was contributed to stress during pregnancy.

133.     March 4, 2020, (Email) From: Jessica Scobell stating that Plaintiff would like to have a meeting on March 06, 2020 to discuss accommodations and Plaintiff must return to work by March 10, 2020 despite my doctor's note due to Plaintiff's severe depression and debilitating anxiety.

134.     On July 2, 2020, Plaintiff was not offered reemployment with Defendant's Company.

135.     Plaintiff was discriminated against based upon her age gender (female) and race (African American).

136.     Plaintiff suffered additional damages set forth in this Complaint.

## FIRST CAUSE OF ACTION
**(Discrimination Based on Race, Color, National Origin, Gender or Age in violation of State and Federal Statutes)**

137.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

138.     Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on gender, and age or a combination thereof.

139.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq. and Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

140.     Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff to disparate terms of employment based upon gender (pregnancy), and race(African American) or a combination thereof.

141.     Plaintiff was continually subjected to harassment and disparate treatment that others did not experience, not of her protected class, and complained of that harassment to management.

11

142.    Defendant did not remedy the harassment.

143.    Defendant allowed the harassment based upon race and gender to continue.

144.    Defendant allowed the individuals committing the harassment to show open hostility after the harassment was complained about to members of management.

145.    Defendant discriminated against Ms. Fleming when Defendant retained as employees, managers who continued to subject Plaintiff to discrimination in the workplace throughout the term of employment with Defendant.

146.    No other similarly situated persons, not of Ms. Fleming's protected class, were subject to the same or substantially similar treatment.

147.    Plaintiff suffered adverse economic impact including but not limited to loss of pay, benefits, expenses and other damages which will be more fully described at the time of trial.

148.    Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

149.    Plaintiff suffered and continues to suffer compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

150.    Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

151.    Pursuant to 1991 Amendments to title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious, intentional repeated violations of federal and state civil rights laws. Discrimination based on gender has been illegal since 1964 and an employer of the size, reputation and experience of Defendant should have not engaged in this blatant discrimination.

152.    Plaintiff suffered damages in an amount to be deemed sufficient by the jury.

153.    Plaintiff is entitled to an award of reasonable attorney's fees.

154.    Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her gender, and age or a combination thereof.

155.    Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other

employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

### SECOND CAUSE OF ACTION
### (Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and Nevada State Law, NRS 613.340)

156.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

157.     In violation of 42 U.S.C § 2000e-3, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory as outlined herein.

158.     In violation of NRS 613.340 Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory as outlined herein.

159.     The behavior complained of also constitutes retaliatory harassment and the creation of an illegally hostile environment.

160.     There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff in her workplace.

161.     The aforementioned actions and conduct by Defendant constitutes illegal retaliation which is prohibited by federal and state statutes.

162.     Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and she is entitled to be fully compensated therefor.

163.     Plaintiff had to engage the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA))

164.     Plaintiff repeats, re-alleges, and incorporates herein by reference, the allegations contained in the foregoing paragraphs as though fully set forth herein.

165.     The Family and Medical Leave Act applies to employers that meet the following requirements:

    a.  Employees at companies with 50 or more employees who work within 75 miles of the primary work site.

b.  Employees must have worked at the company for at least 12 months (for at least 1,250 hours in those 12 months) before they can take leave under FMLA.

166.    The Defendant also provided a copy of their policy which mirrors the FMLA.

167.    Plaintiff did work for the Plaintiff beginning on August 1, 2018.

168.    Plaintiff was unlawfully terminated on July 2, 2020.

169.    Plaintiff was employed for longer than twelve (12) months at the time of her unlawful termination.

170.    Defendant also has an excess of fifty (50) employees.

171.    Plaintiff was therefore entitled to leave under the Family and Medical Leave Act.

172.    When an employee requests FMLA leave or the employer acquires knowledge that leave may be for a FMLA purpose, the employer must notify the employee of his or her eligibility to take leave, and inform the employee of his or her rights and responsibilities under the FMLA.

173.    When the employer has enough information to determine that leave is being taken for a FMLA-qualifying reason, the employer must notify the employee that the leave is designated and will be counted as FMLA leave.

174.    Even though Plaintiff was eligible for FMLA leave, Plaintiff was not given the FMLA paperwork in a timely fashion, and  Defendant knew that Plaintiff required FMLA Leave for herself, and to protect the health of her unborn child.

175.    Plaintiff was legally entitled to FMLA Leave and Defendant knew that there was an underlying medical reason for the FMLA Leave given the medical documentation that was provided by Plaintiff to Defendant.

176.    Defendant was not cooperative, and continually, and maliciously would not provide the proper FMLA Documentation to Plaintiff, causing her stress and complications with her pregnancy.

177.    Plaintiff was eventually terminated for utilizing her federally protected FMLA leave.

178.    Defendant has as many as two hundred and fifty employees and therefore must comply with the FMLA.

179.    Plaintiff was required to retain counsel to prosecute this FMLA violation cause of action

14

and is entitled to an award of reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION
**(Discrimination Based on Disability in violation of State and Federal Statutes)**

180.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

181.    Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on Disability.

182.    Plaintiff was capable of performing work tasks with accommodations.

183.    Plaintiff is a qualified individual able to perform her job tasks.

184.    Plaintiff informed Defendant that she had a disability and that it was affecting her job.

185.    Plaintiff is a qualified individual with a disability that is able to perform the essential functions of her job with a reasonable accommodation.

186.    Defendant was aware of the disability but never offered a reasonable accommodation and did not engage in the interactive process with Plaintiff to help her to obtain a reasonable accommodation to assist her in performing the essential functions of her position.

187.    Defendant did act as if reasonable accommodations would be made in support of her disability.

188.    No reasonable accommodations were made even though Plaintiff made her employer aware that she has a disability that was affecting her work.

189.    Defendant never engaged in the interactive process of attempting to obtain a reasonable accommodation for Plaintiff.

190.    Defendant, as an employer is subject to Nevada and federal statutes prohibiting discrimination based upon Disability, NRS 613.330 et. seq. and the ADA et. seq. as amended and thus, has a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination based upon Disability.

191.    Plaintiff informed Defendant she had a disability affecting a major life function.

192.    Defendant refused to take reasonably adequate steps to prevent discrimination against

Plaintiff to based upon Disability.

193.     Plaintiff informed Defendant of her Disability and Defendant acted as though her work performance was therefore not an issue and gave Plaintiff a false sense of security that she was granted a Reasonable Accommodation.

194.     No other similarly situated persons, not of Plaintiff's protected class, were subject to the same or substantially similar treatment.

195.     Plaintiff suffered adverse economic impact including but not limited to loss of pay, benefits, expenses and other damages which will be more fully described at the time of trial.

196.     Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

197.     Plaintiff suffered and continues to suffer compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

198.     Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

199.     Plaintiff is entitled to recover punitive damages for Defendant's malicious, intentional repeated violations of federal and state civil rights laws.

200.     Plaintiff suffered damages in an amount to be deemed sufficient by a jury.

201.     Plaintiff is entitled to an award of reasonable attorney's fees.

202.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her Disability.

203.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

**WHEREFORE**, Plaintiff prays for relief against Defendants, each of them, as follows:

## **ON ALL CAUSES OF ACTION**

1.     For compensatory damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

16

2.     For punitive damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

3.     For special damages in the principal amount in excess of seventy-five thousand dollars, ($75,000.00) to be proven at trial;

4.     For attorney's fees and costs incurred;

5.     For all damages in an amount to be proved at trial;

6.     For costs of suit herein incurred;

7.     For reasonable interest on amounts due; and

8.     For any such other and further relief as this Court deems just and proper.

DATED this 20th day of December, 2022.

**MULLINS & TRENCHAK, ATTORNEYS AT LAW**

/s/ Philip J. Trenchak
Philip J. Trenchak, Esq.
Nevada Bar No. 009924
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Parkway
Las Vegas, NV 89104

17

## PLAINTIFF'S JURY DEMAND

Plaintiff, BREONNA FLEMING by and through her attorneys of record, PHILIP J. TRENCHAK, ESQ. and VICTORIA MULLINS, ESQ. of the law firm MULLINS & TRENCHAK, ATTORNEYS AT LAW, respectfully submits this Demand for Jury pursuant FRCP 38 in the above captioned matter.

DATED this 20th day of December 2022.

**MULLINS & TRENCHAK, ATTORNEYS AT LAW**

/s/ Philip J. Trenchak
PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 009924
VICTORIA C. MULLINS, ESQ.
Nevada State Bar No. 13546
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
E: victoria@mullinstrenchak.com
Attorneys for Plaintiff

18

# **Exhibit A**
## Right to Sue Notice

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Breonna L. Fleming<br>10429 Gold Shadow Ave.<br>LAS VEGAS, NV 89129 | From: Las Vegas Local Office<br>333 Las Vegas Blvd South, Suite 5560<br>Las Vegas, NV 89101 |
|---|---|

| EEOC Charge No.<br>487-2020-01938 | EEOC Representative<br>**Donna Cutley,**<br>**Senior Investigator** | Telephone No.<br>**702) 553-4455** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Christine Park-Gonzalez
09/20/2022

Enclosures(s)

**Christine Park-Gonzalez**
**Acting District Director**

cc: **Crystal Thiriot**
**SOMERSET ACADEMY OF NEVADA**
**4650 LOSEE RD**
**North Las Vegas, NV 89081**
**Amy R Lancaster**
**8540 S EASTERN AVE STE 180**
**Las Vegas, NV 89123**
**Gary P Sinkeldam**
**8540 S EASTERN AVE STE 180**
**Las Vegas, NV 89123**
**Anais M Caccamo**
**8540 S EASTERN AVE STE 180**
**Las Vegas, NV 89123**

**Philip Trenchak**
**The Law Offices of Philip J. Trenchak**
**1614 S. Maryland Pkwy.**
**LAS VEGAS, NV 89104**

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*